Good morning. My name is John Borman. I'm an assistant federal public defender for Guam. I'm representing Mr. Santos. We're here today because Mr. Santos has appealed the district court's rejection of his motion to suppress. Mr. Santos, this is a traffic stop where the police officers originally stopped him for driving with his headlights off. Eventually he turned into a DUI arrest and then a search approximately 15 minutes after he left the scene. The district court relied on two rationales in denying Mr. Santos his motion to suppress. One, that the search by the police officers after Mr. Santos had left the scene was a contemporaneous to the arrest, contemporaneous to the incident. The second rationale that the district court relied on was that police officers had probable cause to search. I'll focus first on what the district court laid out first as its first rationale, that this was a proper search contemporaneous to the arrest. In this case, I would ask you all to look very carefully at the factual scenario here. The excerpts of record contain 22 pages of police reports, which is fairly bulimicous police reports for a fairly simple incident. This is a traffic stop. There was no violence, no injuries. In fact, the officers at first just thought it was probably just your average DUI. Then they found a weapon and some baggies of marijuana underneath the seat after my client had left the scene. We have extensive police reports in this case. They're detailed in the excerpts of records from I believe pages 7 to 29. Those also contrast with the testimony of the police officers at the motion to suppress. The motion to suppress, the police officer's testimony almost 20 months later. You will find significant differences between the police reports and the motion to suppress testimony. The judge, although the judge didn't say so exactly, but Judge Impinco, I think it's clear when you read his decision, which again is in the excerpts of records, took note of the inconsistencies between the information in the bulimicous police reports and the officer's testimony 20 months later. In his decision, the court notes that they adopted the timing of events as described in the police reports. The district court judge never says exactly, I am going with the police reports, but it's clear when you read it, I would argue that he is adopting the police officer's original police reports and not the inconsistencies that are contained in the motion to suppress. And the facts are important here. Well, the officer Tenorio had already left with the defendant when the searching officer showed up. Yes, Your Honor. That is our position. And you say that is not incidental to the arrest. Yes, Your Honor. Because the time period between when Officer Tenorio left and when Officer Lozama began the search is approximately 15 minutes. You suggested maybe the district court didn't adopt or agree with or make a finding on the time schedule in the police report, 225 a.m. to 255 a.m. But the way he enumerated all that in his order, it sounds like he did adopt it. Yes, Your Honor. I would agree that he did. He did say that for the sake, I just want it to be absolutely clear, he did say that for the sake of the timing of events, he definitely adopted what was laid out in the police reports. There may be some questions whether he adopted everything in the police reports as opposed. But I agree with Your Honor that yes, he did adopt the timing. Now, what fact do you claim is disputed? Because the trial judge seemed to think most of the facts weren't disputed and it's just a question of law. Your Honor, I believe I agree with the trial judge. It's just when I've read the brief by the government, they seem to be now relying on the testimony of the police officers. But I would go with what the district court says and I agree that there is no dispute. That my client, Mr. Santos, left with Officer Tenorio at approximately 240 and that Officer Lizama began his search. It's a little bit unclear, but he found the items at approximately 255, 15 minutes later. So I would argue that it is, that the district court has settled this issue and it is supported by the police reports, as I said, Voluminous Police Reports. So then the issue is, is that 15 minutes between when Mr. Santos arrested, handcuffed, placed in a police car, taken away from the scene, and then 15 minutes later a search by Officer Lizama? Was the car secured? Was there another officer standing by or something? Or was there any break in the possession? Could nearby vagabonds have helped themselves to whatever was in the car while 15 minutes was going by? Absolutely not, Your Honor, because the record indicates that the first officer who stopped my client, Sergeant Davis, he remained on the scene for the entire time and at 240, so the time difference between 240 when Officer Tenorio left with my client and 250 when Officer Lizama arrived on the scene, Sergeant Davis was there at all times. So the car was in their custody. There is no indication that there was any problem with possession of the car. Was there any discussion of an inventory search or anything like that? No, Your Honor, we argue that this is not, there is no inevitable discovery or an inventory search applicable in this case. As the, and it's noted in the record also, that the policy of the Guam Police Department at that time was whenever possible, release the car, do not impound the car. And they had already had contact with the father of my client who was standing by nearby. It's not sure if he was at home, somewhere near the scene, but he was ready to take possession of the car. So they had possession of the car, and as soon as they wanted to, they could turn it over. If they wanted to further search it, if they thought they did need to, they certainly could have gotten a detention, magistrate should have taken the car in and got a search warrant. No, I just was wondering, I guess you want us to redefine what is incidental. Not exactly, Your Honor. It's clear that this court has ruled that five minutes after, and that's when you look at the McLaughlin case, that this circuit has held that five minutes after someone is arrested and taken from the scene, that can be held to be contemporaneous. Is this some kind of an auction? I've heard five now, do I hear ten? Do I hear fifteen? Where's the limit? Maybe I should be asking Ms. Johnson. I would argue that is exactly the question. Although I would ask you to look at McLaughlin because in McLaughlin you had the five minutes that was allowed to be okay. The reason why there was a five minute delay was while that defendant was being taken away, the officer was filling out impound forms. So he was filling out a necessary part of the arrest and impoundment procedure. So that was all consistent with the procedures with an arrest and detention. So that five minutes this court held, that five minutes was all right. Then we have Bassey, which held that clearly a 30 to 45 minute gap breaks the chain. It cannot be contemporaneous. Now here we have a case that falls in the middle of 15 minutes. However, but there is no indication. There's no, unlike the five minutes that was allowable in McLaughlin, there was no, they were not filling out any necessary paperwork. They were simply standing around. There is a break in between the search, or between the arrest, handcuffing, and transportation of my client and the search. What do we do about Officer Lizama's testimony that the defendant was still at the scene when he started the search? Well, I believe the district court didn't place much reliance on that. And I would ask the court also, and I believe the reason they didn't, was when you look at, if you look at page 24 of the excerpts, and that is the report of Officer Lizama. And about midway down that report, on page 24 of the excerpts, you see where Officer Lizama says under synopsis, about 2.50 a.m., 5.22.99, I arrived at the scene and noted a red Daewoo Lanos MNG 2547 and was instructed to search the vehicle relative to an arrested person. Look at the detail that he has here. He not only notes the car, the color, the make, the model, and was instructed to search relative. I would argue that certainly if my client was there standing next to that vehicle, he would have noted that fact. This is a synopsis and a very accurate and detailed explanation. Certainly if the defendant, Mr. Santos, was standing there in front of that car or being interviewed or searched at that time, I would argue Officer Lizama would have put that in there. But the district court really didn't resolve that. The district court resolves what happens after the arrest and says then that Tenorio removes the defendant after doing all these other things, separately talks about Lizama, but never says whether the defendant was there when Lizama arrived. That's exactly true, and that is one of the problems in this case. I think when you read between the lines, I think it's clear what the district court was saying and the fact where the district court says we rely on the timeline set out in the police reports, but the judge never did say exactly where were all the parties. If the district court's finding of probable cause is correct, does that moot out the problem you've been discussing up to now? Unfortunately, it does. I would like to address that briefly. Certainly. Yes, if the district court did find probable cause or if probable cause did exist here, but I would argue that the government did meet its burden of preponderance of evidence when you look at there. Again, here is where the record is important. There is case law that does say that knowledge among police officers can be imputed. So clearly, Officer Davis and Officer Tenorio knew about these alleged marijuana cigarettes. The question is, did they ever tell Lizama? Because when you look at the other cases, Delviso and Hartson, Illinois versus Andreas, when officers are cooperating in an investigation, the knowledge of one is presumed shared by all. But when you look at those cases, there is evidence of communication. And again, when you look at 24, when you look at page 24, Officer Lizama's report of what happened that day, he was instructed to search relative to an arrested person. And when you look at that detail, you say, why didn't he say he was instructed to search relative to possible marijuana? So it is not there. So I would argue that they have not shown that. When did they know that? Was there marijuana in his pockets and stuff when they took him away? When they patted him down just prior to taking him away, they found a small plastic container in his pants pocket with two hand-rolled cigarettes. Officer Tenorio was the officer who found that. He said he was not sure. Well, actually, I'm going to speak. Well, it's simple possession, an offense in Guam. I'm sorry? It's simple possession of two cigarettes. That is an offense in Guam. It is an offense. So he could be arrested and charged with something other than a mere traffic offense? Absolutely. Well, then I guess the question is, does that probable cause reach back to the car after he's gone away? When you look at the testimony of Officer Tenorio, though, the officer who found it, he was very clear. He said he was not arresting him for DUI. He said he suspected that these were marijuana cigarettes, but he took them down with the defendant down to the precinct and then had them field tested. So I would argue at that point they did not have probable cause. They were field tested down the precinct approximately 40 minutes later. Couldn't the officer tell by smelling them? He, in his testimony at the motion to suppress, he did say that he thought by smelling it that they were marijuana cigarettes. But he was also quite clear in his police report. So he said, I was not arresting him for this. I'm simply transporting them and we'll find out later. Is there any reason to hold off a decision to see what the Supreme Court does in Gantt? In terms of the incident to arrest issue? That's a very good point. I don't know where to advise your honors on that. I would argue that this 15 minutes is clearly wrong. It is so far attenuated from the initial arrest. I mean, when you look back to what is, why is there an exception, search contemporaneous to arrest, and that is for officer safety and preservation of evidence. There is none of that here. We have drifted so far from the original rationale that I would argue that this 15 minutes simply is just too attenuated. Okay. May it please the court. Karen Johnson for the United States. There may be a case to test this 15-minute theory, but this ain't it. The facts or the alleged facts by the defense is based on a fundamental misapprehension, and that is that arrested at 240 means tossed into the car and transported at 240. In fact, that is not what happened, and there is no discrepancy between the police reports and the testimony of the officers. The defendant was arrested at 240. That is to say he was told he wasn't going to be going anywhere. After that, at the scene, Officer Tenorio patted him down, searched him, found the marijuana, advised Sergeant Davis of that. When you look at the excerpts of the record, you see that Tenorio arrived at Central Precinct at 303, about 23 minutes after he put the defendant under arrest. As you will also see in the record, Central Precinct is about maybe four blocks away, maybe two minutes' drive away, even if you hit the red light, the one red light between where he was stopped and where Central Precinct is. It's very close. Most of that time, the defendant was on the scene, and Officer Lizama said he was on the scene. He was, of course, focusing on the car. But at 114 of the supplemental excerpts of record, you will see that he even overheard Tenorio tell Sergeant Davis, it looks like we've got marijuana cigarettes here. He wasn't instructed to search the car for marijuana cigarettes specifically, but to see whether there was anything else in the car that was drug-related. So there is no factual dispute, and there is no issue about a break in time for search and arrest. The issue is whether the defendant was on the scene or not. This man was on the scene contemporaneous with the beginning of the search of the car. When did they find the gun? Oh, probably about shortly around 3 o'clock. And by then, he had left the scene. The defendant was on his way to Central Precinct. That's what's giving him trouble, isn't it? Well, it shouldn't. Is he serving this 15-month sentence? Oh, yes. It's about to be over pretty quick here. If we wait for the Supreme Court, it will be over. Well, I was thinking about the justice question. I do not think that you need to wait because there is no factual dispute. If I understand the defense brief, it is that the defendant had left the scene before the search of the car began. Well, didn't the trial judge say, nevertheless, or something? No, he didn't. Did he make a finding on that? No, because he didn't need to, or he felt he didn't need to. The defense, the entire trial was based, or as you see the motion to suppress, was based on the proposition the defendant had left and he had this gap in time. The judge took the position that even if the defendant had left, there wasn't enough of a break in time to take it out of the search incident to arrest scenario. But he did not find that there was a discrepancy. He simply, if you look at excerpts of record, page, I'm citing his order now, page 56, he says, for the sake of argument, the court will adopt the timing of the events described in the police reports. And when you look at page 55, we have the fundamental problem. 240, Officer Tenorio arrests the defendant. That doesn't mean he left the scene at 240. The court seems to be assuming he drove away at 240, and that's simply not true. What is it, because of the limits on time, I want to ask you about another, about the probable cause question. Because the judge found that whatever else was involved there was probable cause to search this. Now, what gives the officers probable cause on a traffic stop when they take the man away because they think he has a couple of cigarettes in his pocket? But what is the probable cause to then go back and search the car without a warrant for contraband or guns or what have you? The fact that they found marijuana on his person gives them probable cause to believe that there is more in the car. And I cite a considerable amount of authority when I address that on my brief, that beginning, I think, at page 9, I was surprised at the number of cases that uphold that even finding less indicia of marijuana is sufficient to justify a search of a vehicle. Can they search closed packages within the vehicle, say a briefcase or a toolbox or a glove box? Under the current law from the Supreme Court, I don't think there's a closed container exception, unless it's locked, and, of course, we have just no issue like that. The gun was in plain view when he looked in the car. But you look, for example, at U.S. v. Edmo, 140 Federal 3rd. The officer looked in the car because the defendant had been stopped for driving under the influence of something, and he didn't even find marijuana. He sees a marijuana pipe on the center console of the car, and that was sufficient probable cause to search the car. In this case, they found on the defendant's person actual marijuana cigarettes or what they believed to be. So the answer is yes. Finding that on his person under present law gives them authority to search the car. So if they have probable cause to search the car, is your position that they don't need to connect up whatever time makes it incidental to the arrest? No, no. I think that to be a search incident to arrest, this McLaughlin is- Well, you have to have probable cause. Well, you have to have probable cause, but if, for example, the defendant has gone down to jail and been booked, they've got to do something with that car. They've either got to lock it up and secure it, or they've got to impound it, or they have to turn it over to the custody of a relative. And this is not a search incident to- I mean, a search pursuant to inventory. So to justify a search incident to arrest, I think it has to be reasonably contemporaneous with his arrest. And because the facts just don't create a gap in time, I don't think that that's relevant to deciding this case. There is no inconsistency. The defendant was on the scene. He hadn't left. I'm finished. Okay. Unless there are no more questions? I guess not. Thank you. Your Honor, I meant to reserve one minute. It's okay. You're over, but go ahead. I'll make it very quick. Thank you for your patience. Just two quick points. One is, is there a factual dispute? I would argue no. When you look closely at the judge's order, again on page 56, in the middle of the page, thus the police reports indicate by the time Officer Lizama arrived on the scene to conduct the search of the vehicle, Officer Tenorio had already left the scene. I think it's clear from the clear reading of the district court's ruling that they had found that my client had left the scene. Certainly, if they wanted to contest this, the factual findings of the district court judge, they could have filed a motion for reconsideration right after the judge issued his ruling. They didn't. They don't like the judge's ruling, but you can read it and it's very clear. As to why, as to the probable cause issue, there is no evidence of any communication. That is the problem between Officer Tenorio and Officer Lizama during that time period. It would have been very easy after my client had left the scene 15 minutes to simply impound the vehicle, go to a neutral district, neutral magistrate, and get the search warrant. It's a little bit inconvenient, but however the Constitution. At 2 in the morning and 1, it's pretty inconvenient to get a search warrant. Oh, yes, Your Honor. Oh, no. They do have Supreme Court justices on hand, and after all, they simply need to take that into custody, keep it down the police-impound lot, and they have someone who can keep watch over it. It is not a massive inconvenience. It certainly would bear constitutional muster if they had done it that way. All right. We understand that both of you came a very long way for this argument. We appreciate that plus your argument today. It's helpful. Thank you. Thank you, Your Honor. The matter just argued will be submitted. We'll turn next to United States Attorney General. Thank you.
judges: Goodwin, Rymer, T.G. Nelson